1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   RANDY STEVENS, ELISSA STEVENS,  ) Case No. 3:14-CV-02043 SC
    dba FLAMINGO PROPERTIES,        )
10                                  ) ORDER GRANTING DEFENDANT'S
                      Plaintiffs,   ) MOTION FOR SUMMARY JUDGMENT
11                                  )
          v.                        )
12                                  )
                                    )
13  ZURICH AMERICAN INSURANCE       )
    COMPANY,                        )
14                                  )
                      Defendant.    )
15  _____ )

16

17       Now before the Court is Zurich American Insurance Company's

18  ("Zurich") motion for summary judgment.  ECF No. 36 ("Mot.").  The

19  motion is fully briefed,[1] and the Court finds it suitable for

20  disposition without oral argument pursuant to Civil Local Rule 7-

21  1(b).  The essential facts are undisputed.  For the reasons set

22  forth below, Zurich's motion for summary judgment is GRANTED.

23

24  I.  **BACKGROUND**

25       This case involves an insurance dispute between Plaintiffs

26  Randy Stevens, Elissa Stevens, and Flamingo Properties

27  _____

28  [1] ECF Nos. 44 ("Opp'n"); 46 ("Reply").

**United States District Court**
For the Northern District of California

1   (collectively "Plaintiffs" or "Stevens") and Defendant Zurich

2   regarding business income that was allegedly lost as a result of

3   water intrusion and property that was allegedly stolen by Stevens's

4   landlord, F&A Properties.  Stevens purchased the commercial

5   insurance policy at issue ("the Policy") from Zurich in February

6   2010, with a coverage period from February 19, 2010 to February 19,

7   2011.[2]  See ECF No. 36-29 at ZA6838.

8       Stevens owned and operated a Jiffy Lube Service Center

9   franchise in Rohnert Park, California from July 1, 2005 to April 9,

10  2010.  Throughout that time, the facility's basement would flood

11  during rainstorms due to cracks in the foundation and basement

12  walls.  Stevens claims that whenever it rained, the business was

13  forced to close for half a day to clean up the water in the

14  basement.  As a result of having to close, Stevens alleges that he

15  lost thousands of dollars of business income.

16      In 2009, Stevens's Jiffy Lube store began facing financial

17  difficulties and fell behind on rent.  By March 9, 2010, total

18  unpaid rent amounted to $34,447.  On April 5, 2010, Stevens's

19  landlord, F&A Properties, delivered a "Three Day Notice to Pay Rent

20  or Quit."[3]  Upon receiving the Notice, Stevens began to move out of

21  the Rohnert Park location.  Stevens personally removed all of the

22  cash from the store, and instructed his employee, Ben Turnbow, to

23  remove inventory and equipment.  See ECF Nos. 36-11 ("Phillips

24  ────────────

25  [2] Stevens cancelled his coverage on April 23, 2010.  See ECF No.
    36-32.

26  [3] A "Three Day Notice to Pay Rent or Quit" is a step in the
    unlawful detainer and eviction process.  See generally, Cal. Civ.

27  Proc. Code § 1161(2).  F&A Properties later filed an unlawful
    detainer action against Stevens, which was subsequently amended as

28  a breach of contract claim.

**United States District Court**
For the Northern District of California

1   Depo.") at 10:3-9; 36-12 ("EUO Vol. II") at 257:1-15; 36-13

2   ("4/15/15 Turnbow Depo.") at 43:17.   Mr. Turnbow proceeded to

3   remove the inventory and some, but not all, of the equipment.   See

4   ECF No. 36-5 ("6/5/12 Turnbow Depo.") at 121:9-25; 4/15/15 Turnbow

5   Depo. at 39:19-20.   Upon receiving a phone call from Stevens, Mr.

6   Turnbow stopped removing equipment from the store "because it

7   appeared that [the store was] going to be reopening" in light of

8   new negotiations between Stevens and his landlord.   4/15/15 Turnbow

9   Depo. at 38:1-6; see also id. at 55:11-18.

10      Mr. Turnbow returned several days later with the intention of

11  reopening the store for business.   His key, however, could no

12  longer open the door.   Id. at 58:25-59:2.   When he returned later

13  that day, a new oil change company had moved into the facility.

14  Mr. Turnbow testified that he did not attempt to remove anything

15  else from the facility at that point because an individual at the

16  facility told Mr. Turnbow that Mr. Turnbow "didn't really belong

17  there."   Id. at 65:9-12.

18      Neither Mr. Turnbow nor Mr. Stevens ever returned to the

19  Rohnert Park store to remove the remaining equipment.   Instead,

20  Stevens testified that he filed a police report and hired an

21  attorney to help recover his remaining property.   ECF No. 36-14

22  ("Stevens Depo. Vol. I") at 81:6-10.   Stevens has not provided any

23  evidence, however, of specific efforts made, if any, by his

24  attorney or anyone else to recover the equipment.

25      On June 3, 2010, the landlord's attorney advised Stevens's

26  attorney that Stevens could return to the store and remove certain

27  property, but Stevens did not do so.   See ECF No. 36-19.   In

28  addition, both the landlord and the tenants that replaced Stevens

United States District Court
For the Northern District of California

at the facility testified that Stevens was free to remove any of the equipment that he left behind at the store.  See ECF No 36-20 ("Oroz Decl.") ¶¶ 14-16; 36-21 ("Shifflet Depo.") at 65:19-21. Stevens, however, never attempted to make any arrangements to do so.

Several months after Stevens moved out of the Rohnert Park facility, Stevens's landlord filed a complaint for breach of contract for unpaid rent and other damages.  See ECF No. 36-24. Stevens then filed a cross-complaint seeking, among other claims, damages for equipment remaining at the property.  See ECF No. 36-25.  The lawsuit settled on August 8, 2013 with Mr. Stevens receiving $150,000.  See ECF No. 36-27.

Stevens submitted several insurance claims to Zurich relating to the dispute with his landlord, but each of those claims was denied.  Subsequently, Stevens filed the instant action in Napa County Superior Court on April 3, 2014.  See ECF No. 1-1 ("Compl.").  The Complaint alleges, in part, that Zurich breached the terms of the Policy by failing to provide coverage for (1) theft of personal property and (2) the loss of business income due to basement flooding.[4]  All other claims asserted in the Complaint have since been voluntarily dismissed.  See Opp'n at 2.  Stevens seeks $103,729 to replace the allegedly stolen property and $4,789 for the loss of business income caused by flooding during the Policy's coverage period.  ECF No. 37 at 3, 23.  On May 2, 2014, Zurich removed the case to federal court.

///

_____

[4] Plaintiffs also bring a related claim for breach of the covenant of good faith and fair dealing.

4

**United States District Court**
For the Northern District of California

## II.  LEGAL STANDARD

### A.   Summary Judgment

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary judgment should be entered against a party that fails to make a showing sufficient to establish the existence of an element essential to its case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

### B.   Insurance Contract Interpretation

Where the underlying facts are undisputed, interpretation of an insurance policy is a question of law.  Merced Mut. Ins. Co. v. Mendez, 213 Cal. App. 3d 41, 45 (1989); see also Legacy Vulcan Corp. v. Super. Ct., 185 C.A. 4th 667, 688 (2010) ("Contract interpretation, including the resolution of any ambiguity, is solely a judicial function, unless interpretation turns on credibility of extrinsic evidence.").

///

///

///

**United States District Court**
For the Northern District of California

1    **III.  DISCUSSION**

2         Zurich's motion makes three main arguments.  First, Zurich

3    argues that the undisputed facts show that the equipment at issue

4    was not stolen.  Second, as to Stevens's business income loss

5    claim, Zurich argues that Stevens's purported loss falls outside of

6    the Policy's scope.  Third, Zurich asserts that summary judgment

7    should be granted as to both of Stevens's claims because they are

8    barred by the Policy's two year contractual suit limitation period.

9    The Court addresses each of Zurich's arguments in turn.

10        **A.   Coverage for Stolen Property**

11        The Policy provides coverage for physical loss or damage to

12   covered property as a result of theft.  <u>See</u> ECF No. 36-29 at

13   ZA6860.  California courts have held that when undefined in an

14   insurance policy, as here, theft

15            should be given the usual meaning and understanding
             employed by persons in the ordinary walks of life, and
16           should be construed as common thought and common speech
             now imagine and describe it.  Accordingly, theft involves
17           the idea of a knowingly unlawful acquisition of property;
             that is, a felonious taking of it.
18
             . . .
19
             [Thus,] there must exist a criminal intent to steal . . .
20           that consists of the intent, without a good faith claim
             of right, to permanently deprive the owner of possession.
21

22   <u>Barnett v. State Farm Gen. Ins. Co.</u>, 200 Cal. App. 4th 536, 543,

23   (2011) (quoting <u>Granger v. New York Ins. Co.</u>, 108 Cal. App. 290,

24   294 (1930)).

25        Stevens has not presented any evidence to support his claim

26   that Stevens's landlord, F&A Properties, stole the equipment in

27   question.  Theft requires the deprivation of property "in a

28   criminal manner, rather than by due process of law."  <u>Id.</u> at 544.

6

In response to Stevens' failure to pay rent, F&A Properties delivered a Three Day Notice to Pay Rent or Quit and later filed an unlawful detainer and breach of contract action in which Stevens counterclaimed for the value of his property.  F&A Properties and Stevens pursued their rights and settled their dispute regarding the equipment through "due process of law."  To the extent that Stevens was deprived of his property, it was not done "in a criminal manner."

Stevens contends that his property was stolen because F&A Properties allegedly locked him out of the Jiffy Lube facility.  A lockout, without more, does not amount to theft.  Stevens was locked out because he did not pay his rent, not because F&A Properties wanted to steal his property.  In order to have committed theft, F&A Properties must have intended to permanently deprive Stevens of his equipment.  Stevens does not present any evidence to support such a claim, by inference or otherwise.  The only evidence on this issue is the landlord's declaration, in which he testified that Stevens was free to pick up the equipment at any point.  Oroz Decl. ¶¶ 14-16.  Nor has Stevens provided any evidence to demonstrate that he attempted to retrieve the property or that his attempts to retrieve the property were denied.  Quite the opposite, the attorney for F&A Properties advised Stevens's attorney that Stevens could return to the store and remove certain equipment, but Stevens failed to do so.  See ECF No. 36-19.

In short, Stevens's theft claim fails for lack of any evidence showing that the equipment was stolen.  As a result, Zurich's motion for summary judgment as to Plaintiffs' theft claim is GRANTED.

**United States District Court**
For the Northern District of California

1    **B.    <u>Coverage for Loss of Business Income</u>**

2         The Policy provides coverage for lost business income

3    sustained due to a suspension of operations "during the 'period of

4    restoration.'"   ECF No. 36-30 at ZA6890.   The Policy specifies that

5    "the period of restoration" begins "72 hours after the time of

6    direct physical loss or damage . . . ."  <u>Id.</u> at ZA6897.   In

7    addition, the Policy dictates that "[t]he suspension must be caused

8    by direct physical loss of or damage to property at [the]

9    premises . . . ."  <u>Id.</u> at ZA6890.

10        Even if one were to assume that a flooded basement constitutes

11   a "direct physical loss of or damage to property,"[5] Stevens's claim

12   for lost business income fails because Stevens's business was

13   closed for only four hours each time it rained.   The period of

14   restoration, however, did not commence until 72 hours after each

15   flood.   Thus, the four hour closures of the business never came

16   close to meeting the required 72 hour deductible.

17        Stevens argues that the 72 hour deductible does not apply

18   because his claim qualifies as an "Extra Expense," for which the

19   "period of restoration" commences "[i]mmediately after the time of

20   direct physical loss or damage . . . ."  <u>Id.</u> at ZA6897.  "Extra

21   Expense" is defined as "the necessary expenses you incur during the

22   'period of restoration' which you would not have incurred if there

23   had been no direct physical loss or damage to property caused by or

24   resulting from a Covered Cause of Loss."  <u>Id.</u> at ZA6890.  Stevens's

25   claim is comprised of lost revenue, payroll expenses, and rent

26   ─────────────
     [5] Zurich argues that the floods are not covered because they merely
27   required cleanup and did not result in physical loss or damage.
     The Court does not address this issue given the various other
28   reasons Stevens's claim should be denied.

8

**United States District Court**
For the Northern District of California

1    expenses.  <u>See</u> ECF No. 36-41 at 23.  Payroll expenses and rent

2    expenses are normal ongoing expenses, not necessary expenses that

3    would not have been incurred if there had been no direct physical

4    loss or damage.  Lost revenue is an income loss, not an expense.

5    No additional expenses, such as outside cleaning companies,

6    restoration services, or repairs were incurred.  Thus, Stevens's

7    claim is for a business income loss which requires a 72 hour

8    waiting period before the period or restoration begins, rather than

9    an Extra Expense claim that does not have a 72 hour waiting period.

10       For these reasons, Zurich's motion for summary judgment as to

11   Plaintiffs' loss of business income claim is GRANTED.

12       **C.   <u>Contractual Suit Limitation Period</u>**

13       The Policy also includes a two year contractual suit

14   limitation period restricting an insured's ability to bring a suit

15   related to the Policy.  The relevant clause states that "[n]o one

16   may bring a legal action against us under this Coverage Part

17   unless: . . . The action is brought within 2 years after the date

18   on which the direct physical loss or damage occurred."  ECF No. 36-

19   29 at ZA6874.

20       California follows the reasonable discovery rule and the

21   equitable tolling doctrine.  <u>See</u> <u>Prudential-LMI Com. Ins. v. Super.</u>

22   <u>Ct.</u>, 51 Cal. 3d 674, 686-87, 693 (1990).  Accordingly, the

23   contractual limitations period begins to run when the insured

24   discovers or should have discovered the property loss or damage,

25   but it is tolled between the time the insured reports the loss to

26   the insurer and the time the insurer denies the claim.  <u>See</u> <u>id.</u>

27       Stevens alleges that his property was stolen on April 12,

28   2010.  The theft claim was first made on August 12, 2010.  Zurich

denied his claim on June 15, 2012.  Thus, Stevens's theft claim tolled during the 674 day investigation between August 12, 2010 and June 15, 2012.  Stevens did not file his Complaint until April 3, 2014.  Thus, 1453 days passed between the date of loss (April 12, 2010) and the date the Complaint was filed (April 3, 2014).  After subtracting 674 days for the tolling period, the total equals 779 days.  Given that two years is equal to 730 days, Stevens's claim for stolen property was filed 49 days late.

Stevens submitted his claim for loss of business income from water intrusion on August 3, 2010.  The claim tolled during the investigation between August 3, 2010 and June 15, 2012, for a total of 683 days.  The total days between the date of loss (February 23, 2010) and the date the Complaint was filed (April 3, 2014) is 1500 days.  After subtracting 683 days for the investigation period, the total equals 817 days.  Given that two years is equal to 730 days, Stevens's claim for loss of business income from water intrusion was filed 87 days late.

Stevens disputes these calculations.  He argues that the June 15, 2012 letter denying his claim "was not absolute and asked . . . for more information."  Opp'n at 8.  The letter, however, did not ask for more information and was unequivocal in its denial of coverage:

> This letter is to advise the Insured that Zurich American respectfully denies Flamingo Properties Jiffy Lube's claim for first-party benefits under the Policy in its entirety because there has not been a covered loss or damage to the Insured's property.  The claim the Insured has presented to Zurich American is in essence a business and legal dispute with the landlord Francisco Oroz over disputed property and is not a covered loss under the Policy.

ECF No. 36-38 at 1.

<div style="writing-mode: vertical;">**United States District Court**
For the Northern District of California</div>

1    Stevens also argues that there was a second tolling period

2  between October 31, 2013 and January 13, 2014.  This period,

3  however, relates to Stevens's separate claim for legal costs

4  associated with the lawsuit filed against him by his landlord.  <u>See</u>

5  ECF No. 44-35.  Thus, it did not toll his claims for stolen

6  property and lost business income.

7    Because this action is barred by the Policy's two-year

8  contractual suit limitation period, Zurich's motion for summary

9  judgment as to all claims is GRANTED for this independent reason.

10

11  **IV.  <u>CONCLUSION</u>**

12    For the foregoing reasons, Zurich's motion for summary

13  judgment is GRANTED.

14

15    IT IS SO ORDERED.

16

17    Dated: September  9 , 2015          _____

18                                        UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28